```
         UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF WEST VIRGINIA

                    CHARLESTON


STEVEN E. DENKENBERGER, JR.,

        Plaintiff,

v.                                Case No. 2:11-cv-00466

WARDEN DAVID BALLARD,

        Defendant.
```

### PROPOSED FINDINGS AND RECOMMENDATION

On July 5, 2011, the plaintiff, an inmate at Mount Olive Correctional Complex ("MOCC"), filed a Complaint, alleging that his constitutional rights have been violated in connection with the "Quality of Life" program in the Administrative Segregation unit at MOCC. This matter is assigned to the Honorable Joseph R. Goodwin, Chief United States District Judge, and it is referred to the undersigned for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

### STANDARD OF REVIEW

Pursuant to the provisions of 28 U.S.C. § 1915A, the court screens each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On review, the court must dismiss the case if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a

defendant who is immune from such relief. In Bell Atlantic Corp v. Twombly, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Id. at 555.

The Supreme Court further explained its holding in Twombly in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.

> While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.[1]

## PLAINTIFF'S ALLEGATIONS

The Complaint states as follows [spelling corrected]:

> On March 14, 2011, I was placed in the segregation unit on detention, pending a hearing for two Class One rule violations. I was wrote up for two counts of 1.27 - Hate/Gang Activity for the following reason: Mr. Mullins and Ms. Crist were at the officers' desk/control desk while the C.O. was conducting cell shake downs of random inmates' cells. I was walking past the officers' desk when I heard Ms. Crist say to Mr. Mullins, "See, that's what I'm talking about, his shirt right there." Mr. Mullins then quickly turned to me and said, "You need to button up that shirt." I responded that, "It's not against the rules," and Unit Manager Mr. Kincaid confirmed that it wasn't against the rules four days prior. Mr. Mullins then said, "It could be viewed as gang activity." I then said, "You know I'm in a 'gang,' everything I do can't be viewed as gang activity." I then went into Mr. Kincaid's office to have him handle the issue about my shirt. Once in Mr. Kincaid's office, Mr. Kincaid made it clear that he told me four days prior, that it was not against the rules to wear my shirt in that manner. Mr. Mullins got upset and started saying, "It could be viewed as gang activity," over and over again. I said, "Look, I'm in a 'gang,' get over it." I then left the office and entered the pod, where Ms. Crist was still sitting, running the control desk. As I walked in, I looked at her and said, "Look, everyone knows I'm a 'gang' member, you need to get over it." She did not respond. I then walked on the other side of the

---

[1] Because service of process has not occurred, a motion to dismiss has not been filed in this case. Such a motion, filed pursuant to Rule 12(b)(6), *Fed. R. Civ. P.*, asserts that the complaint fails "to state a claim upon which relief can be granted," which is the same standard set forth in 28 U.S.C. § 1915A.

desk and buttoned the top two buttons on my shirt and asked her, "Here, is this still gang activity?" referring to now having two top buttons buttoned, not just the very top button alone. She got very upset and said, "You need to get the fuck out of my face." I said, "I don't 'need' to do shit." I then said, "Everything I do you people try to say is gang related." She responded, "Well, you are in prison." I asked her, "What the fuck is that supposed to mean?" She then told me I needed to leave her area a few times. Now since the officer was done conducting his shakedowns, he was there and asked me to "walk away." I did so. About an hour later, yard officers came to my cell and took me to the segregation unit. On March 29, 2011, I was found guilty of Ms. Crist's 1.27 Hate/Gang Activity charge and sentenced to 60 days punitive segregation and 60 days loss of privileges. I was also found guilty of Mr. Mullins' write-up, but it was reduced from a Class 1 (1.27) to a Class 2 (2.01) refusing an order, and sentenced to 30 days punitive segregation, 30 days loss of privileges, which was suspended to probation that will start once the 60 days punitive and L.O.P. that was given for Ms. Crist's write-ups were finished. The reasoning I was given by the hearing officer on why I was found guilty for gang activity was because I've never been found guilty of it before, and because of that, it was not in the computer saying I'm a known gang member. Once I appealed the guilty findings to the warden, he had given me a different reason why I was found guilty, saying because I proclaimed I was a gang member in earshot of other inmates, and that alone was gang activity. I then appealed to the Commissioner of Corrections, but my appear was rubber-stamped affirmed to the warden's decision. In both of my appeals and my hearing, my defense was that the rules failed to give fair notice and warning that my conduct was prohibited, and that the rule in question was open for interpretation by staff because the language within the policy where it states, "<u>ANY</u> gang activity" is open for staff's personal interpretation and is in violation of my due process rights.

Because of my guilty finding and my sentence from the guilty finding of 60 days in punitive segregation, I was forced to see the Administrative Segregation Committee. At this hearing I was placed on Administrative Segregation/Quality of Life program (Q.O.L.) The reason I was given on why I was being

placed in the Q.O.L. program was because the nature of my write-ups that placed me on segregation, my need to live in a more secure environment, and confidential information presented by intelligence officer Gary Hinte. I was never told of the confidential information. I know I'm not allowed to know who gave the information, but I am allowed to know what the information being used against me is, so I may mount a defense against it. I was not allowed to do that. For all I know, there may not even be any information.

    I claim that my due process rights were violated when I was wrote up, found guilty, sentenced and placed on Administration Segregation for a rule violation that is vague, and failed to give fair warning of what is prohibited. The prison staff have unfetter discretion when enforcing these rules. They are allowed to insert their own personal beliefs and stigmas upon the inmate population, and rule book. And now I'm on the Q.O.L. program where I'm given extreme restrictions on my daily life within this prison. I'm forced to have extreme restrictions on recreation, education, programming requirements for parole, store call items, lock-down time, showers, phone usage, other electronic devices that general population enjoys, freedom from being placed in handcuffs and shackles as a form of the insensitive/ privilege/punishment program of Q.O.L, clothing limits, job opportunities. I'm being denied due process for not being given meaningful and periodic reviews, my mail is being photocopied and read and I'm not made aware of these practices nor are the friends and family members who are writing, not given proper access to the law library, not allowed the equipment for daily cleaning of my cell, not allowed the same amount of food, my food is routinely cold, milks within a crate are slid across a nasty, dirty, dusty, hair-filled water-spotted floor, then given to us to drink out of, there is no set regulations on what conduct is prohibited while on the Q.O.L. program. While main rules from policy directive 325.00 do apply to us, there are unwritten rules that we are punished for without due process or even being told what we did wrong. It's completely up to the staff and their personal beliefs along with their unfettered discretion when enforcing any rule violation. I"m also being denied and excluded from organized prison activities such as basketball and softball leagues and open house activities.

>	Warden David Ballard was made aware of all these issues and failed to correct them. He allows his staff free range on interpreting the policy directive and rarely overrules his staff's judgment because of his history as a correctional officer with them in the past. Warden Ballard has not and refuses to fix the policy directive or put restrictions upon his staff members when enforcing these extremely vague rules. Warden Ballard is aware of these problems and he has yet to act on them, still allowing his staff to have unfettered discretion on the policy directive 325.00, showing extreme deliberate indifference and is in violation of my due process rights protected by the Fourteenth Amendment of the United States Constitution.
>
>	This incident also resulted in me being denied to see the parole board, because I was in segregation for the vague write-ups in question, and state law prohibits inmates from seeing the parole board while in segregation or if you were found guilty of a rule violation in the 90 days prior to your parole hearing. I was found guilty of a vague rule violation and because of that, I was denied my right to see the parole board.
>
>	The notice I was given for my ad-seg hearing failed to give me adequate notice as to what was going to be used against me at that hearing. I was not allowed to mount a meaningful defense at my hearing, in violation of my due process rights.

(Complaint, ECF No. 1, at 8-19.) The plaintiff seeks the following relief: (1) force the prison to overrule my guilty findings; (2) $31/month for the pay he would have received from prison employment; (3) $100/day for being in segregation; (4) place an injunction on the ruling that placed him in ad-seg; (5) review the confidential information used against him; (6) force the warden to implement rules to limit staff discretion; and (7) court costs and filing fees. <u>Id.</u> at 11.

**ANALYSIS**

In the prison context, a liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).  Following the reasoning of the Supreme Court in Sandin, the undersigned finds no liberty violation implicated in the decisions of prison staff to charge the plaintiff with violations of rules and to find him guilty, with the result that the plaintiff was placed in administrative segregation.  It is not atypical for inmates to be placed in administrative segregation for any number of reasons.  See Hewitt v. Helms, 459 U.S. 460, 468 (1983); Beverati v. Smith, 120 F.3d 500, 502-04 (4th Cir. 1997) ("confinement to administrative segregation does not implicate a liberty interest").  The plaintiff clearly received notice and an opportunity to be heard in connection with his alleged rule violations.  He has received all the process which is due him.

In Farmer v. Brennan, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" This is a low standard.  The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" Id., at 833.

7

Moreover, to sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety." Id., at 834. (Citations omitted.)  The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id., at 837.

The holdings in Sandin, Beverati, Wilkinson and Farmer establish that the plaintiff has failed to state a claim upon which relief can be granted.  The plaintiff has failed to show that he has suffered "a serious deprivation of a basic human need [and] deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993).  Moreover, the plaintiff has failed to allege that he has suffered any serious or significant injury resulting from his Quality of Life assignment.  Strickler requires a showing of significant injury.  989 F.2d at 1381.

Accordingly, the undersigned proposes that the presiding

8

District Judge **FIND** that the plaintiff has failed to state a claim upon which relief can be granted.

It is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** with prejudice the plaintiff's Complaint under 28 U.S.C. § 1915A, and **DENY** his Application to Proceed without Prepayment of Fees and Costs (ECF No. 4).

The plaintiff is notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United

States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to the presiding District Judge.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to the plaintiff.

<u>August 18, 2011</u>  
     Date

*/s/ Mary E. Stanley*  
Mary E. Stanley  
United States Magistrate Judge