IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

STEVEN E. DENKENBERGER, JR.,

          Plaintiff,

v.                                CIVIL ACTION NO. 2:11-cv-00466

DAVID BALLARD,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

This *pro se* action was referred to the Honorable Mary E. Stanley, United States Magistrate Judge, for submission to this court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge has submitted Proposed Findings and Recommendation ("PF&R") [Docket 6]. The PF&R recommends that the court **DISMISS** the action with prejudice for failure to state a claim, pursuant to 28 U.S.C. § 1915A, and **DENY** the application to proceed without prepayment of fees and costs. The plaintiff has filed objections to the PF&R [Docket 7].

The court has reviewed *de novo* those portions of the PF&R to which the plaintiff specifically objects and **FINDS** that the objections lack merit. Accordingly, the court **ADOPTS** and incorporates herein the Magistrate Judge's Proposed Findings and Recommendation and **DISMISSES** the action with prejudice.

    **I.**    **Background**

1

The following facts are taken from the plaintiff's complaint. The plaintiff, Steven E. Denkenberger, is confined at Mount Olive Correctional Complex ("Mount Olive"). As the plaintiff walked by the officer's desk at Mount Olive one day, an employee told Denkenberger that he needed to button up his shirt because it could be viewed as gang activity. Denkenberger responded: "You know I'm in a gang, everything I do can't be viewed as gang activity." (Compl. [Docket 1], at 8.) After attempting to resolve the matter, Denkenberger buttoned his shirt up completely and asked if this was also viewed as gang activity. Denkenberger and another employee engaged in a verbal dispute over the situation.

About an hour later, Denkenberger was taken to a segregation unit. Approximately two weeks later, the plaintiff was found guilty of a Hate/Gang Activity Charge and sentenced to sixty days of punitive segregation and sixty days of loss of privileges. He was also found guilty of refusing an order and sentenced to probation after the sixty-day segregation. Denkenberger appealed the guilty findings, arguing that the rule prohibiting gang activity "failed to give fair notice and warning that [his] conduct was prohibited." (*Id.* at 9.) Denkenberger's appeals were rejected, and he appeared in front of the Administrative Segregation Committee where he was placed on administrative segregation and in the quality of life program. The plaintiff alleges that his "due process rights were violated when [he] was [written] up, found guilty, sentenced, and placed on administrative segregation for a rule violation that is vague, and failed to give fair warning of what is prohibited." (*Id.*) In the quality of life program, Denkenberger claims that there were restrictions on recreation, education, showers, and phone usage, among other things. The plaintiff also claims that he was not permitted to see the parole board while in administrative segregation.

II.     **Standard of Review**

### a. Magistrate Judge's Recommendations

When a Magistrate Judge issues a recommendation on a dispositive matter, the court reviews *de novo* those portions of the Magistrate Judge's report to which specific objections are filed. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3). This court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn,* 474 U.S. 140, 150 (1985). The court will consider the fact that plaintiff is acting *pro se*, and his pleadings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

### b. 28 U.S.C. § 1915A

Pursuant to the provisions of 28 U.S.C. § 1915A, the court screens each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On review, the court must dismiss the case if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

The standard for screening a case under 28 U.S.C. § 1915A is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 8 requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8. As the Supreme Court reiterated in *Ashcroft v. Iqbal*, that standard "does not require 'detailed factual allegations' but 'it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) for the proposition that "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'"). A court cannot accept as true legal conclusions in a complaint that merely recite the elements of a cause of action supported by conclusory statements. *Iqbal*, 129 S. Ct. at 1949-50. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 570). To achieve facial plausibility, the plaintiff must plead facts that allow the court to draw the reasonable inference that the defendant is liable, and those facts must be more than merely consistent with the defendant's liability to raise the claim from merely possible to probable. *Id.*

In determining whether a plausible claim exists, the court must undertake a context-specific inquiry, "[b]ut where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting FED. R. CIV. P. 8(a)(2)). A complaint must contain enough facts to "nudge [] [a] claim across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### III.   Discussion

The Magistrate Judge recommended that the complaint be dismissed for failure to state a claim under 28 U.S.C. § 1915A. Addressing the plaintiff's due process challenge, Judge Stanley found that there was no liberty violation implicated in the decisions of the prison staff to place Denkenberger in administrative segregation. (Proposed Findings & Recommendation [Docket 6], at 7.) Judge Stanley also found that the plaintiff did not state a claim under the Eighth

4

Amendment because he did not allege a serious deprivation of a basic human need and deliberate indifference to prison conditions on the part of prison officials. (*Id.* at 8) (citing *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993)).

The plaintiff filed specific objections to the PF&R, essentially reasserting the arguments made in his complaint. Denkenberger contends that "the court failed to recognize his claim that the prison regulation that placed him in segregation was unconstitutionally vague and failed to give adequate notice of what conduct is prohibited." (Objections to the Court's Recommendation [Docket 7], at 1.) The plaintiff also contests the Magistrate Judge's conclusion that the plaintiff failed to allege that he suffered "serious or significant injury resulting from his quality of life assignment." (*Id.* at 4.)

The Due Process Clause of the Fourteenth Amendment instructs that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. To succeed on his due process claim, Denkenberger must show that he was denied a liberty interest protected by the Due Process Clause *and* that the process employed by the state prison was constitutionally inadequate. *Lovelace v. Lee*, 472 F.3d 174, 202 (4th Cir. 2006). "[W]hen a defendant is lawfully convicted and confined to jail, he loses a significant interest in his liberty for the period of his sentence." *Kitchen v. Upshaw*, 286 F.3d 179, 185 (4th Cir. 2002). Moreover, the people and institutions managing a jail maintain broad discretion over a prisoner's confinement. *Id.*

In *Sandin v. Conner*, the U.S. Supreme Court held that:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

515 U.S. 472, 483-84 (1995) (citations omitted). The Court found that the inmate's thirty-day segregated confinement "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* at 486.

The Fourth Circuit, in *Beverati v. Smith*, applied the test articulated in *Sandin* when two state prisoners appealed the district court's grant of summary judgment in favor of the prison officials. 120 F.3d 500, 501 (4th Cir. 1997). In *Beverati*, prison officials confined the two inmates to administrative segregation for six months after the officials confiscated materials considered to be escape paraphernalia from the inmates. *Id.* First, the court explained that the administrative segregation did not exceed the sentence imposed in such an extreme way that it gave rise to due process protections by its own force.

The question before the court, therefore, was whether the confinement in administrative segregation "imposed such an atypical hardship on them vis a vis ordinary prison life that they possessed a liberty interest in avoiding it." *Id.* at 502-03. The Fourth Circuit noted that the prison regulations indicated that conditions in administrative segregation were generally similar to those in the general population, and those conditions that were different were "not particularly onerous." *Id.* However, inmates' affidavits claimed that conditions in segregation were much worse than conditions in the general population. Specifically, they claimed that "their cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. . . . Inmates maintain[ed] that their cells were unbearably hot and that the food they received was cold." *Id.* at 504. The inmates also claimed that there was no outside recreation permitted, no educational or religious services, and food was served in smaller portions. *Id.* Taking these facts as true for the purposes of summary judgment, the Fourth Circuit held that, "although the conditions were more burdensome that those imposed

on the general prisoner population, they were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life." *Id.* Therefore, these conditions did not implicate a liberty interest. *Id.*

In light of the Fourth Circuit's interpretation of *Sandin* in *Beverati v. Smith*, the plaintiff in the instant suit has failed to state a procedural due process claim under § 1983 because the conditions the plaintiff was subject to did not implicate a liberty interest. The plaintiff's segregation lasted for sixty days, which is considerably shorter than the six-month segregation in *Beverati*. Moreover, although Denkenberger complained of specific restrictions while in segregation, like those on recreation, education, showers, and phone usage, these allegations do not indicate that the conditions of his confinement were atypical and resulted in significant hardship relative to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484. The conditions that Denkenberger describes, while more restrictive than those in the general population, are not as atypical as the conditions described in the inmates' affidavits in *Beverati*. 120 F.3d at 504. If the conditions in *Beverati* were not sufficient to implicate a liberty interest, then neither are the allegations contained in Denkenberger's complaint. Because the allegations in Denkenberger's complaint do not implicate a liberty interest, I do not reach the second prong of a due process claim—whether the process employed by the state prison was adequate. Without a liberty interest at stake, the Due Process Clause does not govern the processes employed in the prison officials' decision to place Denkenberger in segregation.

The Magistrate Judge also recommended dismissal of the plaintiff's § 1983 claim arising under the Eighth Amendment. I agree with Judge Stanley's analysis that the plaintiff failed to allege that he suffered a serious deprivation of a basic human need and that the prison officials

exhibited deliberate indifference to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

## IV. Conclusion

Having reviewed *de novo* those portions of the Magistrate Judge's report to which specific objections were filed, the court accepts and incorporates herein the findings and recommendation of the Magistrate Judge and orders judgment consistent with the findings and recommendation. The court **DISMISSES** the plaintiff's complaint with prejudice under 28 U.S.C. § 1915A and **DENIES** his Application to Proceed without Prepayment of Fees and Costs.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: February 17, 2012

Joseph R. Goodwin, Chief Judge